483 F.2d 428
 Mrs. Yvonne Reed LEGER, Individually and as tutrix of her
minor children, et al., Plaintiffs-Appellants,
v.
WESTINGHOUSE ELECTRIC CORPORATION and Liberty Mutual
Insurance Company, Defendants-Third Party
Plaintiffs-Appellees,
v.
CITIES SERVICE OIL COMPANY et al., Third Party Defendants-Appellees.
 No. 72-3411.
 United States Court of Appeals,
Fifth Circuit.
 July 25, 1973.
Rehearing Denied Aug. 28, 1973.
 
 W. D. Atkins, Jr., Lafayette, La., for plaintiffs-appellants.
 W. R. Tete, Lake Charles, La., for Cities Service & Ins. Co. of N. A.
 Meredith T. Holt, Edmund E. Woodley, Lake Charles, La., for Kellog.
 A. Lane Plauche, Lake Charles, La., for Transformer.
 James J. Davidson, Jr., Robert M. Mahony, Lafayette, La., for appellees.
 Reginald W. Farrar, Jr., Lake Charles, La., for Westinghouse Elec. Corp. and Liberty Mutual Ins. Co.
 Before THORNBERRY, AINSWORTH and RONEY, Circuit Judges.
 RONEY, Circuit Judge:
 
 
 1
 Conversations between a juror and the defendant insurance company's representative during trial recess require this jury verdict to be set aside under United States v. Barfield, 359 F.2d 120 (5th Cir. 1966), unless the District Court was correct in holding that the evidence was insufficient to present a jury question. Holding that there was sufficient evidence for a jury issue, we reverse.
 
 
 2
 Joseph D. Leger was fatally burned on November 6, 1969, when a large high voltage switch manufactured by Westinghouse Electric Corporation exploded at the Cities Service Oil Company Refinery in Lake Charles, Louisiana, where he was employed by Sline Industrial Painters.
 
 
 3
 In this diversity action for wrongful death against Westinghouse and its insurer, the jury found no defect in the design of the switch and no negligence on the part of Westinghouse which was a proximate cause of Leger's death.
 
 
 4
 On two or three occasions during the lengthy trial, however, a representative of Liberty Mutual Insurance Company conversed with a juror about the weather, antiques, and the insurance man's father's retirement. One conversation, in the coffee room, lasted some twenty-five minutes. The trial court denied plaintiffs' motion to have the juror removed and replaced with an alternate juror on the basis that the subjects of the conversations apparently did not concern the case.
 
 
 5
 After the adverse jury verdict, plaintiffs filed motions for new trial and judgment notwithstanding the verdict based on several alleged errors, including the two involved in this appeal.
 
 
 6
 Although it thought the juror's conversations harmless, the District Court, 54 F.R.D. 574, stated that, under United States v. Barfield, supra, it would grant a new trial unless it were clear that there was no substantial evidence which could have supported a contrary verdict. After further consideration, the Court concluded that there was insufficient evidence to support a verdict for plaintiffs and a new trial would be useless.
 
 
 7
 Plaintiffs' multiple theory of recovery was comprised of the Louisiana doctrine of res ipsa loquitur; Westing-house's negligence in manufacturing, failing to warn, and failing to instruct properly as to operation and maintenance; and strict products liability.
 
 
 8
 The evidence showed that Joseph Leger, a painter, was preparing to work inside a transformer substation when the high voltage switch exploded and he was fatally burned by flaming oily material. The exact cause of the explosion could not be proved. One primary expert witness was called by each side, and several consultants gave peripheral testimony. Plaintiffs' principal witness, a well qualified consulting engineer, pointed out several design weaknesses, about which the manufacturer should have provided warning. He explained that any of several technical external factors could have triggered one of these defects and caused the accident.
 
 
 9
 Westinghouse's senior design engineer, although claiming that the devices were not defective, admitted in his testimony that the alleged weaknesses could have been avoided and that the equipment's instructions did not warn of the dangers which could cause failure. The device's twenty-six years of usage not-withstanding, no expert contended that the accident resulted from normal usage, except that natural factors, such as moisture and vibrations, likely triggered the flaw.
 
 
 10
 In considering the sufficiency of the evidence, we must consider all the evidence "in the light and with all reasonable inferences most favorable to the party opposed to the motion." Boeing v. Shipman, 411 F.2d 365 (5th Cir. 1969). The explanation of the accident posed by plaintiffs' expert-design defects, inadequate operation and maintenance instructions, triggering by natural, physical factors-is not implausible. The competence and credibility of the witnesses were challenged. The evidence was of "such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might [have reached] . . . different conclusions," Boeing v. Shipman, supra, at 365, and the evidence, therefore, was sufficent to go to the jury.
 
 
 11
 Having found a jury issue, we agree with the District Court that this case is controlled by United States v. Barfield, supra, and that a new trial is required.
 
 
 12
 In Barfield, an action for federal income tax refund, this Court held that the elevator conversations between the president of the corporate taxpayer and the jurors about family relationships created such inherent harm that a new trial was necessary. Although it was alleged that no harm was done, the Court reasoned that
 
 
 13
 [o]ur system of trial by jury presupposes that the jurors be accorded a virtual vacuum wherein they are exposed only to those matters which the presiding judge deems proper for their consideration. This protection and safeguard must remain inviolate if trial by jury is to remain a viable aspect of our system of jurisprudence. Any conduct which gives rise to an appearance of evil must be scrupulously avoided.
 
 
 14
 359 F.2d at 124.
 
 
 15
 In the case at bar, the exchanges between the juror and the litigants' representative were deliberate conversations, not inadvertent exchanges or greetings. The insurance man was not a novice at personal injury litigation, and his failure to terminate the conversations immediately evidences his inclination to identify himself to the juror. Although their exchange did not broach upon the litigation, their discussion of common interests constituted the sort of personal involvement prohibited by Barfield, where the conversation was even more public than those in question. Barfield teaches that the harm is inherent in the deliberate contact or communication between juror and litigant.
 
 
 16
 This result necessarily requires the vacating of the ordered dismissal of the other defendants inasmuch as that order was based on the exoneration of Westinghouse.
 
 
 17
 Vacated, reversed and remanded.